Receipt #062589

ORIGINAL

ECF

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

FILED
MAR 23 2005
U.S. COURT OF FEDERAL CLAIMS

THOMAS L. REMPFER
3811 PHELPS ROAD
WEST SUFFIELD, CT 06093

and

RUSSELL E. DINGLE
71 SHAUGHNESSY DRIVE
EAST HARTFORD, CT 06118

Plaintiffs,

v.

UNITED STATES OF AMERICA

Defendant.

Civil Action No. 05-396C

**COMPLAINT**

Plaintiffs Thomas L. Rempfer and Russell E. Dingle, both former officers and pilots with the Connecticut Air National Guard, were forced to resign due to their position regarding and refusal to obey orders to take the anthrax vaccine. Those orders, however, were unlawful due to the illegal status of the vaccine.

Plaintiffs seek relief pursuant to the Administrative Procedure Act, 5 U.S.C. § 551, et seq., the Tucker Act, 28 U.S.C. § 1491, Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and the All Writs Act, 28 U.S.C. § 1651.

**PARTIES**

1. Thomas L. Rempfer ("Rempfer") was a Captain and pilot in the Connecticut Air National Guard until he was forced out.

2. Russell E. Dingle ("Dingle") was a Major and pilot in the Connecticut Air National Guard until he was forced out.

3. The United States of America controlled the Department of Defense ("DoD") and Connecticut Air National Guard ("CT ANG"), and ran the Anthrax Vaccination Immunization Program ("AVIP") that led to the issuance of unlawful orders.

**JURISDICTION AND VENUE**

4. Jurisdiction and venue is proper in this Court under the Administrative Procedure Act, 5 U.S.C. § 702, the Declaratory Judgment Act, 28 U.S.C. § 2201, and under 28 U.S.C. §§ 1331, 1346, 1491.

**BACKGROUND**

5. In December 1997, DoD announced a multi-service vaccination program for all active duty, Reserve and National Guard service members using the Anthrax Vaccine Adsorbed ("AVA") as a preventative for inhalation anthrax.

6. In or around March 1998, the Anthrax Vaccination Immunization Program ("AVIP") began. The CT ANG was one of the first National Guard Units in the United States to have its members face inoculation.

7. As part of the AVIP, Rempfer and Dingle were ordered to submit to involuntary anthrax vaccinations. Refusing to comply with orders to take the AVA inoculations subjected service members to military disciplinary actions, including courts-martial or administrative discharges.

8. In September 1998, the CT ANG Fighter Wing Commander (FW/CC), Col Walter Burns, officially tasked Rempfer and Dingle, as members of what was called "Tiger Team Alpha", to investigate the AVIP in order to allay unit concerns. At the time, and during all relevant times, Col. Burns held the unique status as a federal active duty

Air Force officer commanding the first state Guard unit to implement the federal AVIP mandate.

9. The Tiger Team Alpha's charter was to research the safety, efficacy and legality of the anthrax vaccine, and report its findings to chain of command, so that Col. Burns could relay any concerns to Higher Headquarters (HHQ). Over the ensuing months Tiger Team Alpha questioned the "off label" and the "investigational" and "experimental" use of the vaccine without providing "informed consent" as required by applicable DoD regulations and United States law. Col. Burns took the input and "condensed it into a memo" and sent it "to MGen Weaver and BGen McKinley, who were the Director and the Deputy Director [of the Air National Guard] at the time." Col. Burns later told DoD investigators that he was "not equipped to answer the issues and the questions that [were] outlined in [the] attachment," and asked for HHQ: "Please give me some help." In this memo to HHQ Col. Burns acknowledged that an "official government position on some of their issues does not exist."

10. Despite the unanswered questions, Col. Burns referred to anyone questioning the AVIP as "hardliners." Col. Burns also verbally and publicly communicated intolerance toward anyone who questioned the DoD's policy. He even used the term "traitor" for those who would not take the vaccine.

11. In December 1998, pilots who expressed concerns about the AVIP were encouraged to leave the unit ASAP, or their fate might be out of their commander's hands. Rempfer was also relayed this threat by the 103rd FW Vice Commander, Col. Daniel Scace, from the CT Adjutant General that officers would never serve in the

military again if they caused any problems regarding challenging the anthrax vaccine mandate.

12. Unit leaders issued a policy letter establishing a deadline of the January Unit Training Assembly (UTA, or "drill") to submit to the vaccine. Any CT ANG pilot that did not comply with the anthrax vaccine mandate was grounded and their resignations ordered by Col. Burns. Those who spoke publicly were also ordered to resign via phone calls to their homes on January 22, 1999.

13. Both Remper and Dingle were thus required to resign their commissions as CT ANG officers as a direct result of the anthrax vaccine controversy. Although they resisted, they were constructively discharged. But for the anthrax vaccine, Rempfer and Dingle would still be officers in the CT ANG today.

14. During and after the time Rempfer and Dingle were forced out of the CT ANG, Col. Burns and other top CT ANG commanders continued to defame their character. Slanderous accusations, communicated to enlisted personnel in the unit, included terms such as "cowards." Other allegations characterized Tiger Team Alpha's well-researched findings as "propaganda," originating from "Nazi websites." One of the CT ANG leaders even published an article in a local newspaper, the *Journal Inquirer*, denigrating the officer's actions and claiming they did "not uphold their oath."

15. By April 1999, both Rempfer and had been officially forced out of the CT ANG simply because of their stance against the anthrax vaccine, and their refusal to be inoculated.

16. On December 22, 2003, the U.S. District Court for the District of Columbia issued a Preliminary Injunction on the basis that "because the record is devoid of an FDA

decision on the investigational status of AVA … [it] is persuaded that AVA is an investigational drug and a drug being used for an unapproved purpose. As a result of this status, the DoD is in violation of 10 U.S.C. § 1107, Executive Order 13139, and DoD Directive 6200.2."

17. On October 27, 2004, the U.S. District Court for the District of Columbia issued a permanent injunction and ruled that "Unless and until FDA properly classifies AVA as a safe and effective drug for its intended use, an injunction shall remain in effect prohibiting defendants' use of AVA on the basis that the vaccine is either a drug unapproved for its intended use or an investigational new drug within the meaning of *10 U.S.C. § 1107*. Accordingly, the involuntary anthrax vaccination program, as applied to all persons, is rendered illegal absent informed consent or a Presidential waiver."

18. Thus, at the time Rempfer and Dingle, and others of the CT ANG, were ordered to take the anthrax vaccinations, such order was facially unlawful. Therefore, Rempfer and Dingle were illegally and unfairly forced out of the CT ANG.

**FIRST CAUSE OF ACTION**
**(VIOLATION OF ADMINISTRATIVE PROCEDURE ACT)**

19. Plaintiffs reallege the facts in Paragraphs 1 through 18 as if fully set forth in this Count.

20. The United States Government, acting through the DoD and CT ANG, violated a federal statute, namely 10 U.S.C. § 1107, as well as Executive Order 13139 and DoD Directive 6200.2, when it illegally required the plaintiffs to submit to anthrax vaccinations.

21. The Defendant's failure to follow federal law, a Presidential Executive Order and regulations creates a legal wrong against the Plaintiffs.

22. As a result of the defendants' unlawful actions, the plaintiffs suffered damages including, but not limited to, being forced out of the CT ANG and all associated financial losses incurred as a result, such as any entitlements due pursuant to 37 U.SC. § 204 or back pay under 5 U.SC. § 5596.

**SECOND CAUSE OF ACTION**
**(VIOLATION OF TUCKER ACT)**

23. Plaintiffs reallege the facts in Paragraphs 1 through 18 as if fully set forth in this Count.

24. The Tucker Act permits money damages against the United States "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort."

25. The United States Government, acting through the DoD and CT ANG, violated a federal statute, namely 10 U.S.C. § 1107, as well as Executive Order 13139 and DoD Directive 6200.2, when it illegally required the plaintiffs to submit to anthrax vaccinations.

26. The Defendant's failure to follow federal law, a Presidential Executive Order and regulations creates a legal wrong against the Plaintiffs.

27. As a result of the defendants' unlawful actions, the plaintiffs suffered damages including, but not limited to, being forced out of the CT ANG and all associated financial losses incurred as a result such as any entitlements due pursuant to 37 U.SC. § 204 or back pay under 5 U.SC. § 5596.

**THIRD CAUSE OF ACTION**
**(DECLARATORY JUDGMENT ACT)**

28. Plaintiffs reallege the facts in Paragraphs 1 through 18 as if fully set forth in this Count.

29. This case involves an actual controversy surrounding the legality of the AVIP.

30. The United States Government, acting through the DoD and CT ANG, violated a federal statute, namely 10 U.S.C. § 1107, as well as Executive Order 13139 and DoD Directive 6200.2, when it illegally required the plaintiffs to submit to anthrax vaccinations.

31. As a result of the defendants' unlawful actions, the plaintiffs suffered damages including, but not limited to, being forced out of the CT ANG and all associated financial losses incurred as a result such as any entitlements due pursuant to 37 U.SC. § 204 or back pay under 5 U.SC. § 5596.

WHEREFORE, Plaintiffs respectfully ask this Court to:

A. Reinstate the plaintiffs into their former positions with the CT ANG;

B. Order the defendant to provide full compensation, including but not limited to back pay, and any other associated financial losses incurred as a result of being forced out of the CT ANG;

C. Find and declare that AVA, as it is being used by Defendant, is an investigational new drug within the meaning of 10 U.S.C. § 1107, Executive Order 13139 and DoD Directive 6200.2;

D. Find and declare that AVA was in investigational new drug status when the DoD and CT ANG were requiring the plaintiffs to receive AVA inoculations;

E. Find and declare that any order issued by DoD and/or CT ANG requiring the plaintiffs to receive inoculation with AVA was unlawful on its face; and

F. Award Plaintiffs their costs and attorneys' fees and any other relief this Court may find appropriate.

Date: March 23, 2005

Respectfully submitted,

David J. Taylor, Esq.
Counsel of Record
D.C. Bar #91280
Tighe Patton Armstrong Teasdale, PLLC
1747 Pennsylvania Avenue, N.W.
Suite 300
Washington, D.C. 20006
(202) 454-2800

Mark S. Zaid, Esq.
Of Counsel
D.C. Bar #440532
Kreiger and Zaid
1747 Pennsylvania Ave., N.W.
Suite 300
Washington, DC 20006

Attorneys for the Plaintiffs